# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0235-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CLARK GILLIAM,
a/k/a CLARK W. GILLIAM,

     Defendant-Appellant.

_____

> Submitted May 7, 2024 – Decided May 15, 2024
>
> Before Judges Enright and Whipple.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-05-0346.
>
> Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Al Glimis, Designated Counsel, on the brief).
>
> William C. Daniel, Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Clark Gilliam appeals from the July 1, 2022 order denying his petition for post-conviction relief (PCR) based on claims of ineffective assistance of counsel. We affirm for the reasons explained by Judge Robert Kirsch in his thorough and well-written opinion issued the same day.

Through counsel, defendant raises the following issues on appeal:

> POINT I: THE PCR COURT IMPROPERLY DENIED DEFENDANT'S CLAIM THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING.
>
> A. Legal Principles Regarding Claims of Ineffective Assistance of Counsel, Evidentiary Hearings and Petitions for [PCR].
>
> B. Defendant Established a Prima Facie case of Ineffective Assistance of Trial Counsel for 1) Failing to call the DNA Expert Regarding the need to Retest the DNA Samples; 2) Failing to call the DNA Expert to Introduce Statements from a Learned Treatise; and 3) Failing to Interview and call Donna Hanson as a Witness.

Pro se, defendant raises the following issues on appeal:

A-0235-22

POINT I: THE DEFENDANT WAS ENTITLED TO A JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT.

POINT II: THE TRIAL JUDGE IMPROPERLY ADMITTED PREJUDICIAL PRIOR BAD ACTS IN DIRECT VIOLATION OF ESSTABLISHED [sic] CASE LAW.

POINT III: THE STATE INTERFERED WITH THE ATTORNEY-CLIENT RELATIONSHIP.

POINT IV: A SPPEDY [sic] TRIAL VIOLATION OCCURRED.

POINT V: JUDICIAL PRECEDENT IS NEEDED TO COVER THE SITUATION THAT THE DEFENDANT CONFRONTED.

POINT VI: THE DEFENDANT WAS POORLY REPRESENTED.

POINT VII: PLAIN ERROR REVIEW IS APPROPRIATE.

On May 19, 2016, a Union County Grand Jury indicted defendant on two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) and N.J.S.A. 2C:14-2(a)(2)(c); and one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The jury trial took place in June 2016.

At trial, it was established that, between approximately 2007 and 2012, defendant sexually abused victim A.D. numerous times, while the child was between the ages of six and twelve. Defendant began dating T.D., A.D.'s

3

mother, in 2007 and moved in with T.D. and her three children in 2010. The sexual abuse and rape continued and, after A.D. began menstruating, resulted in A.D.'s pregnancy in late 2013. T.D. took A.D. to the doctor in February 2014, because A.D. was not eating, was throwing up, was tired, and had missed her period twice. Upon the doctor's advice, T.D. provided A.D. with two pregnancy tests, and they both returned positive results.

When T.D. questioned A.D., A.D. initially claimed to have not had sex with anyone, but eventually admitted to her aunts that defendant had raped her. Upon learning this, T.D. immediately filed a police report, and Sergeant Patricia Gusmano of the Union County Prosecutor's Office (UCPO) Special Victims Unit began investigating A.D.'s claims on February 13, 2014. On February 27, 2014, A.D.'s pregnancy was terminated at an approximate fetal age of fifteen weeks, and the fetal remains were provided to Sgt. Gusmano for submission—along with buccal swabs from appellant and A.D.—to the UCPO Forensic Laboratory for DNA testing. Defendant was arrested on February 26, 2014.

Among other witnesses, the State called Monica Ghannam, a forensic scientist at the UCPO Forensic Laboratory, as an expert in DNA extraction, analysis, and comparison. Ghannam testified as to her procedures, results, and

A-0235-22

conclusions included in her report on the DNA analysis performed on the fetal remains and the comparison samples. During her testimony, Ghannam admitted that one of the genetic markers from the fetal sample contained a "stutter"—an artifact from imperfections during the DNA copying process— and that the electropherogram for an extraction control blank unexpectedly exhibited small spikes, although those spikes were below the measuring threshold set by the UCPO Forensics Lab. Despite these slight irregularities in testing, Ghannam concluded, with a reasonable degree of scientific certainty, defendant was the biological father of the fetal remains from A.D.

In preparation for cross-examining Ghannam, defendant's trial counsel unsuccessfully attempted to introduce into evidence an article from The Scientific Testimony Journal, entitled "DNA Testing, An Introduction for Non-Scientists; An Illustrated Explanation," written by Donald E. Riley, Ph.D. Defendant's trial counsel made no application for judicial notice of the article as a reliable authority and did not call an expert witness to lay the foundation necessary to admit the article under the "learned treatise" hearsay exception. N.J.R.E. 803(c)(18). The State represented that Ghannam, the State's expert witness, was unwilling to testify to the article's reliability.

A-0235-22

On June 17, 2016, the jury found defendant guilty of first-degree aggravated sexual assault, second-degree endangering, and a lesser-included offense of second-degree sexual assault. The court sentenced defendant to an aggregate thirty-year term of incarceration as well as required fines and penalties, including a $3,000 Sex Crime Victim Treatment Fund (SCVTF) penalty.

Defendant filed a direct appeal, arguing the court abused its discretion in dismissing one juror during deliberations and in imposing an excessive sentence on appellant. In an unpublished opinion, we affirmed defendant's conviction and sentence, but reversed and remanded on the issue of the SCVTF penalty. State v. Gilliam, No. A-2882-16 (App. Div. Mar. 26, 2019). Defendant petitioned for certification to the New Jersey Supreme Court, which petition was denied, 240 N.J. 15 (2019).

Defendant filed a pro se petition for PCR, and counsel was assigned. During the PCR proceedings, defendant revealed his counsel had possessed, at the time of the trial, a report purportedly from a DNA expert criticizing Ghannam's analysis because she proceeded with her analysis despite the irregularities in the extraction control blank. After defendant produced this report, and after oral argument, Judge Kirsch issued an order and written

opinion denying defendant's petition for PCR and request for an evidentiary hearing.

We owe "no deference to the legal conclusions of [a] PCR court" but give deference to the PCR court's "factual findings . . . 'when supported by adequate, substantial and credible evidence.'" State v. Harris, 181 N.J. 391, 415 (2004) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). "And for mixed questions of law and fact, [a reviewing court] give[s] deference . . . to the supported factual findings of the trial court, but review[s] de novo the [trial] court's application of any legal rules to such factual findings." Id. at 416.

The PCR court determined, based on the record before it, defendant was not entitled to relief because he did not establish a prima facie case for ineffective assistance of counsel on any of the grounds he asserted. Because the PCR court was able to address each issue based solely on the record and did not need further clarification to clarify issues of material fact, the PCR court was within its discretion to deny appellant an evidentiary hearing before deciding to deny PCR.

In considering claims of ineffective assistance of counsel, New Jersey courts look to whether the defendant has satisfied, by a preponderance of the

A-0235-22

evidence, the test described in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), and adopted in New Jersey by <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987). <u>See</u> <u>State v. Gaitan</u>, 209 N.J. 339, 349 (2012). This test requires, first, the defendant shows "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687; <u>see also</u> <u>Fritz</u>, 105 N.J. at 58. There is a "strong presumption" in favor of counsel, that counsel's conduct during a criminal trial meets the constitutional requirements. <u>Strickland</u>, 466 U.S. at 689. To rebut this strong presumption, "a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" <u>State v. Castagna</u>, 187 N.J. 293, 314 (2006) (quoting <u>Strickland</u>, 466 U.S. at 689).

For the second prong, the defendant must demonstrate that counsel's deficiencies prejudiced the defendant. <u>Strickland</u>, 466 U.S. at 687; <u>see also</u> <u>Fritz</u>, 105 N.J. at 58. Defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," <u>Strickland</u>, 466 U.S. at 687, as well as a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," <u>id.</u> at 694. <u>See also</u> <u>Fritz</u>, 105 N.J. at 60-61. A failure to meet all the mandates of the <u>Strickland</u>/<u>Fritz</u> tests for claims of ineffective

assistance of counsel will result in a denial of PCR on these grounds. See Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

Relying on the record before him, Judge Kirsch determined defendant had not satisfied the Strickland/Fritz requirements for presenting a prima facie case for ineffective assistance of counsel. Specifically, defendant did not overcome the strong presumption that the challenged issues were reasonable strategic decisions by trial counsel and did not demonstrate his case had been prejudiced by trial counsel's decisions. Examining the record de novo, we conclude the PCR court was correct in its conclusions.

Defendant argues defense counsel possessed, at the time of trial, a report by Dr. Norah Rudin, dated December 30, 2014, who opined it was "inappropriate and . . . poor scientific practice" to not repeat the DNA analysis "if at all possible" when "a contamination event is detected." According to defendant, testimony from Dr. Rudin "would have raised substantial doubt regarding the reliability of the scientific evidence against defendant." He contends if trial counsel had called Dr. Rudin to undermine the DNA evidence, defendant may have been acquitted. Thus, according to defendant, trial counsel's failure to call Dr. Rudin as a witness amounted to ineffective assistance of counsel.

9

Judge Kirsch found defendant "fail[ed] to demonstrate that trial counsel's strategic decision did not equate to sound trial strategy." Trial counsel consulted with a DNA expert but ultimately, and understandably, chose not to call her as a witness at trial, given that "Dr. Rudin opined in her own report that 'it is reasonably expected that a reanalysis [of the DNA] would produce the same results,'" indicating appellant's paternity of the fetal remains. Further, citing a colloquy between the trial judge and trial counsel, Judge Kirsch stated, "it appears that trial counsel carefully considered whether Dr. Rudin's testimony would be helpful to the defense, decided that it would not be helpful, and made a strategic decision not to offer it at trial." Finally, Judge Kirsch emphasized trial counsel's "comprehensive cross-examination" of Ghannam, which effectively presented for the jury's consideration "the decision whether to retest, the quality of the sample, and the reliability of the test results."

Defendant also asserts trial counsel's failure to present Dr. Rudin as an expert witness meant counsel failed to properly lay a foundation for the admission of a few pages of a purportedly learned treatise pertinent to the issue of DNA contamination. To imply the failed attempt to admit the article into evidence was prejudicial to defendant, defendant argues DNA contamination

10

was a material issue, because "DNA contamination of the extraction blanks was proven," and the deliberating jury asked why the DNA was not re-tested.

The PCR court decided "[a]lthough trial counsel's attempts at submitting statements from a learned treatise were unsuccessful, [defendant] has not rebutted the strong presumption that his actions . . . equate to sound trial strategy." Defendant made "only . . . bald assertions that a DNA expert could have established the article as a learned treatise at trial."

Based on our review, the trial transcript strongly supports the implication that trial counsel made a considered, strategic decision to not call Dr. Rudin—or, indeed, any qualified expert—as an expert witness at trial. There is also no evidence in the record that anyone would have been willing—or able—to lay the foundation necessary to admit this article as a learned treatise.

Defendant finally argues trial counsel provided ineffective assistance by failing to interview and call as a witness Donna Hanson, the DNA analyst who reviewed and approved Ghannam's report. Emphasizing the importance of the DNA evidence in his conviction, defendant concludes Hanson "should have been called to explain why she did not recommend a retest of the samples in light of the contamination."

A-0235-22

Judge Kirsch correctly found defendant did not overcome the strong presumption that trial counsel's decision to not call Hanson as a witness at trial was a reasonable strategic decision. Defendant did not offer "any indication of what additional testimony Donna Hanson would have added to the record regarding the DNA evidence that Ms. Ghannam did not provide."

To the extent we have not addressed defendant's other arguments, we are satisfied they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION